THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-cv-00071-FL

| | | |
|---|---|---|
| BOSS URGENT CARE, PLLC and ONSLOW URGENT CARE, PLLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| URGENT CARE WORKS, LLC and THE POSEIDON GROUP, INC., | ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for judgment on the pleadings, to dismiss the complaint, for enforcement of the settlement agreement, and for attorney's fees and expenses (DE # 22) pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. Plaintiffs have responded (DE # 25), and defendants have replied (DE # 26). In this posture, the matter is ripe for adjudication. For the following reasons, defendants' motion is denied.

**STATEMENT OF THE CASE**

On April 7, 2011, plaintiffs, BOSS Urgent Care, PLLC ("BOSS") and Onslow Urgent Care PLLC ("Onslow"), initiated this action in diversity against defendants, Urgent Care Works, LLC ("UCW") and The Poseidon Group, Inc. ("Poseidon"), by filing a complaint alleging five claims for relief, including breach of contract and various statutory claims. Plaintiffs also sought a preliminary injunction. On April 27, 2011, the court conducted a telephonic Rule 16 conference at which counsel for the parties reported that they anticipated the matter would be settled. The court directed the parties to file a stipulation of dismissal by July 6, 2011, and that if

no stipulation of dismissal or other documents memorializing a settlement were filed by July 5, 2011, the parties were to appear for a Rule 16 status conference on July 6, 2011. The parties consented to a stay of the case through July 5, 2011, and counsel were directed to file a proposed consent order by May 4, 2011, memorializing the conference. On May 5, 2011, the parties submitted a proposed consent order, and on May 9, 2011, the court entered the consent order ("May 9 Consent Order") staying all deadlines until July 6, 2011, and providing the parties until July 5, 2011, to consummate the terms of their settlement and tender a consent order of dismissal with prejudice. The order further stated that in the event the parties failed to tender a consent order of dismissal with prejudice on or before July 5, 2011, that counsel for the parties were to appear on July 6, 2011, for a status and pretrial conference.

On July 6, 2011, the court convened a status conference upon notice that no stipulation of dismissal had been filed by the July 5, 2011 deadline. At the conference, the parties recited certain activities which defendants argued had resulted in a settlement of the issues in dispute. The court did not consider the alleged settlement agreement at the hearing, but denied plaintiffs' motion for preliminary injunction, directed defendants to respond to the complaint by July 20, 2011, and set various scheduling deadlines, all of which were memorialized in the court's July 11, 2011 order.

On July 21, 2011, defendants filed a corrected answer to the complaint and a counterclaim to enforce a settlement agreement with plaintiffs and for attorney's fees and expenses, to which plaintiffs filed an answer on August 10, 2011. Defendants subsequently filed the instant motion for judgment on the pleadings, to dismiss the complaint, for enforcement of the settlement agreement, and for attorney's fees and expenses, in which they contend that the parties had reached a settlement agreement that is dispositive of plaintiffs' claims and entitles

2

them to a judgment as a matter of law. Plaintiffs responded that the alleged settlement agreement was merely an unenforceable agreement to agree, that, alternatively, defendants breached any purported settlement agreement, and that there is no basis to dismiss their claims or to grant defendants a judgment as a matter of law.

## STATEMENT OF THE FACTS

Plaintiffs BOSS and Onslow are limited liability companies formed to operate urgent care clinics in eastern North Carolina,[1] and Dr. Howard Brown ("Dr. Brown") is a member-manager of both LLCs. Defendant UCW is a limited liability company that operates a practice and records management system supporting electronic medical records, coding, and billing for urgent care medical practices. UCW's billing services are supported by RealMed Corporation ("RealMed"), which provides online processing of claim and payment transactions. On February 5, 2010, Dr. Brown, on behalf of BOSS, entered into an agreement with UCW for use of its practice management system. However, Onslow, not BOSS, began using the UCW system on April 30, 2010, to manage its patient medical records, and on June 1, 2010, it began using the UCW system to manage its billing records. Plaintiffs alleged in their complaint that from the outset there were errors in the functioning of the UCW system that prevented Onslow from submitting claims, providing accurate patient statements, and locating patient records. Plaintiffs further alleged that Onslow disputed bills it received from UCW based on the alleged system errors and that UCW ultimately terminated Onslow's access to the UCW system and refused to provide medical and billing records stored therein.

After this action was filed, the parties engaged in settlement negotiations and agreed upon what plaintiffs characterize as a "term sheet" or "agreement to agree" and what defendants

---

[1] According to defendants' answer to the complaint, BOSS has been voluntarily dissolved and has no operations.

characterize as a "settlement agreement," which the court will hereafter refer to as the "Letter Agreement."  The Letter Agreement, dated April 26, 2011, was drafted by Deborah Fletcher, counsel for defendants, and was addressed to Jim White, counsel for plaintiffs.  It purported to be in response to a counteroffer of April 18, 2011, and in amendment of defendants' letter of April 19, 2011.  The Letter Agreement provided, in pertinent part, as follows: (1) that UCW would create a portal through which Onslow could access and print patient invoices and medical and billing records and also transmit billing information to RealMed; (2) that Onslow would have access to the UCW system for 21 days from the date it established a fully functional link with RealMed, which was necessary in order to process historical claims; (3) that all communications regarding access to and use of the system would be made through counsel; (4) that Onslow would pay UCW 20% of any sums collected from the processing of historical claims up to $65,000.00, which the parties defined as the "Settlement Payments;" (5) that all the terms of the settlement would be effective when reduced to a consent order entered by the court; (6) that within ten days of acceptance of the terms of settlement, Onslow would ship to UCW seven optical scanners previously delivered to Onslow by UCW; (7) that both parties agree to mutual non-disparagement and to sign mutual releases; and (8) that the parties acknowledge that the Settlement Payments would be paid to UCW for the creation of the portal and the full satisfaction of all outstanding obligations and payments under the "UCW Agreement," which the court presumes is the original agreement between BOSS and UCW for use of the UCW system. The Letter Agreement concluded by asking that acceptance of the offer be indicated by plaintiffs' signatures, and Jim White signed the Letter Agreement on behalf of his clients, BOSS and Onslow.

4

On May 9, 2011, the court entered what has heretofore been referred to as the May 9 Consent Order, which was titled "Consent Order to Stay Action Pending Consummation of Settlement." Defendants contend, and plaintiffs dispute, that the May 9 Consent Order is the same consent order contemplated by paragraph 11 of the Letter Agreement. The parties agree that plaintiffs were provided access to records in the UCW system on May 31, 2011, but disagree as to the level of access provided and whether there was full functionality with RealMed as contemplated by the Letter Agreement. Throughout June, the parties' counsel communicated by email regarding the implementation of various terms set forth in the Letter Agreement, including establishment of plaintiffs' access to the UCW system, retrieval of documents by plaintiffs from the UCW system, plaintiffs' return of scanners to UCW, and the 21-day access period. On June 17, 2011, both the parties and their counsel participated in a conference call regarding issues with RealMed and the 21-day access period, which defendants contended would expire on June 21, 2011. As a result of that conference, defendants provided certain records via e-mail to plaintiffs.

On June 21, 2011, plaintiffs' counsel requested an additional seven days of access to the UCW system, and defendants' counsel responded that UCW would shut down the system "in accordance with the settlement agreement," but would reopen access if plaintiffs provided certain additional consideration, including $1,000 to compensate UCW for access to the system beyond the scope of the Letter Agreement. The following day, defendants' counsel provided two additional alternatives under which plaintiffs could gain further access to the UCW system. On June 26, plaintiffs' counsel responded, but the parties failed to resolve their disagreement, ultimately resulting in the filing of the instant motion.

5

# DISCUSSION

## A. Motion for Judgment on the Pleadings

### 1. Standard of Review

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Med-Trans Corp. v. Benton, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008) (quoting Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985)). "When there are no factual issues, judgment on the pleadings should be granted where the moving party is clearly entitled to the judgment it seeks as a matter of law." Id. (citations omitted). "In reviewing a motion for judgment on the pleadings, the court applies 'the same standard' as for motions made pursuant to Rule 12(b)(6)." McMillian v. North Carolina Cent. Prison, No. 5:10-CT-3037-FL, 2012 WL 27303, at *2 (E.D.N.C. Jan. 4, 2012) (quoting Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002)).

A motion for judgment on the pleadings must be converted to one for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). "Thus, a court considering a motion for judgment on the pleadings must base its decision solely on information obtained from the pleadings." Med-Trans Corp., 581 F. Supp. 2d at 728 (citations omitted). However, "[i]n addition to the pleadings themselves, the court may look to documents attached thereto, documents attached to a Rule 12 motion that are integral to the complaint and authentic, and matters of public record of which judicial notice may be taken."

McQuade v. Xerox Corp., No. 5:10–cv–149–FL, 2011 WL 344091, at *3 n.4 (E.D.N.C. Feb. 1, 2011) (citing Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

### 2. Analysis

Defendants contend that the Letter Agreement constitutes a binding settlement agreement between the parties. In support of this contention, they cite to language in both the Letter Agreement itself and the May 9 Consent Order, as well as to actions of both parties that they argue were in conformity with the terms of the Letter Agreement. Plaintiffs counter that the Letter Agreement was merely an agreement to agree and not a binding enforceable contract and that, even if an enforceable contract existed, UCW breached its terms by prematurely terminating Onslow's access to the UCW system. Accordingly, the court will consider whether, as a matter of law, the pleadings establish that the Letter Agreement was a valid and enforceable contract and, if so, whether defendants materially breached the Letter Agreement.

#### a. Interpretation of the Letter Agreement

"A settlement agreement is recognized in North Carolina as 'a valid contract between the settling parties which is governed by general principles of contract law.'" Pacific AG Group v. H. Ghesquiere Farms, Inc., No. 5:05-CV-809-FL, 2007 WL 2410595, at *3 (E.D.N.C. Aug. 21, 2007) (quoting McClure Lumber Co. v. Helmsman Construction, Inc., 160 N.C. App. 190, 197, 585 S.E.2d 234, 238 (2003) (internal quotation and citation omitted)). Under North Carolina law, a contract must have sufficiently definite terms and reflect the mutual assent of the parties in order to be enforceable. Volumetrics Medical Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 399-400 (M.D.N.C. 2003). "A contract 'leaving material portions open for future agreement is nugatory and void for indefiniteness.'" Id. at 400 (quoting Boyce v. McMahan, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974); citing Cheatham v. Ford Motor Co., 64 F.3d 656,

1995 WL 478021, at *3 (4th Cir. Aug. 14, 1995)). Furthermore, "[t]here is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense." Id. (quoting Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679, 122 S.E.2d 716, 719 (1961)).

Plaintiffs first argue that the Letter Agreement never became effective because it was not reduced to a consent order as required by paragraph 11 of the Letter Agreement, which provided that "[a]ll the terms of the settlement will be effective when reduced to a consent order entered by the court in the Litigation[.]" Defs.' Answer, Ex. 1 ¶ 11 (DE # 19-1). Defendants counter that plaintiffs' position is illogical based on the fact that the parties indicated that they would tender a consent order, and then did, in fact, tender a consent order, subsequent to which the parties began to carry out the terms of the Letter Agreement.

"In analyzing [an] agreement, the court must first determine the intention of the parties." Pacific AG Group, 2007 WL 2410595, at *3 (citing Int'l Paper Co. v. Corporex Constructors, Inc., 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989)). "If the contract is unambiguous on its face, the court is permitted to interpret the contract as a question of law; however, if any part of the contract is ambiguous or the intent of the parties is unclear, ambiguities must be resolved and the contract interpreted by the fact finder." Id. "'In the construction of a contract, the parties' intentions control, Cordaro v. Singleton, 31 N.C. App. 476, 229 S.E.2d 707 (1976)[,] and their intentions may be discerned from both their writings and actions.' Walker v. Goodson Farms, Inc., 90 N.C. App. 478, 486, 369 S.E.2d 122, 126 (1988) (citing Bank v. Supply Co., 226 N.C. 416, 38 S.E.2d 503 (1946); Zinn v. Walker, 87 N.C. App. 325, 361 S.E.2d 314 (1987); Heater v. Heater, 53 N.C. App. 101, 280 S.E.2d 19 (1981)), disc. rev. denied, 323 N.C. 370, 373 S.E.2d 556 (1988)." Arndt v. First Union Nat. Bank, 170 N.C. App. 518, 522, 613 S.E.2d 274, 278 (2005).

8

There appears to be no disagreement between the parties that the language of paragraph 11 required that the settlement be reduced to a consent order entered by the court to become effective. The question is whether the May 9 Consent Order was the consent order contemplated by paragraph 11 of the Letter Agreement. Defendants so alleged in their counterclaim, and plaintiffs expressly denied the same in their answer thereto. However, the plaintiffs' denial alone is insufficient to create a question of fact where the actions of both parties leave no doubt that they intended the Letter Agreement to be a binding settlement agreement and that the May 9 Consent Order would make effective the terms of that settlement in conformity with paragraph 11 of the Letter Agreement.

The language of the May 9 Consent Order indicates, among other things, that the parties had settled the case and that they would consummate the settlement and tender a consent order of dismissal to the court by July 5, 2011. The May 9 Consent Order makes no mention of the filing of a second interim consent order, and it would be unreasonable to conclude that the parties intended the settlement terms to become effective only upon tender of the consent order of *dismissal*. Yet more persuasive is the fact that the parties set about consummating the settlement the day following entry of the May 9 Consent Order.

On May 10, 2011, counsel for the parties began corresponding regarding UCW's creation of the portal and establishing connectivity with RealMed and, subsequently, drafted and delivered to RealMed an authorization to access data agreement between the parties and RealMed and discussed when the 21-day period should begin to run. Defs.' Answer, Ex. 6 at 1-18 (DE # 19-6). On June 2, 2011, counsel for plaintiffs acknowledged that as of May 31, 2011, Onslow had access to the UCW system and that a previously contemplated conference call of all parties (including RealMed) "to help get things up and running" would not be necessary. Id. at

9

21. On June 7, 2011, one week after plaintiffs achieved access to the UCW system, defendants' counsel emailed plaintiffs' counsel to confirm that there were no problems, addressed plaintiffs' method of transmitting billing records to RealMed, and confirmed that the portal would be open for the required 21-day period to expire on June 21, 2011. Id. at 25.

On June 10, 2011, defendants' counsel emailed plaintiffs' counsel regarding Onslow's agreement to return the scanners "[u]nder the terms of the settlement agreement" and sent follow-up emails on June 13 and 14 to confirm that there were no problems with plaintiffs' access to the UCW system. Id. at 29. On June 15, 2011, plaintiffs' counsel responded that his understanding was that the scanners would be sent that day, but that he was concerned about the June 21, 2011 deadline because plaintiffs had experienced problems with RealMed. Id. at 33. He also stated that it was his understanding with defendants' counsel, "which [they] tried to set out in the agreement," that the 21 days of access was contingent on full functionality with RealMed. Id.

On June 21, 2011, plaintiffs' counsel requested an additional seven days of access to the UCW system for the purpose of printing medical records only and stated that his understanding was that there was no need for further access to the billing system. Id. at 47. Defendants' counsel responded that UCW would shut down the system "in accordance with the settlement agreement," but would reopen access upon receipt from plaintiffs of (1) $634.48 each for the two missing scanners, (2) the other scanners that were to be returned under "the settlement agreement," and (3) $1,000 to compensate UCW for access to the system "beyond the scope of the agreement," which would not be credited toward any payments due "under the settlement agreement." Id. at 51. The following day, upon receipt of a package containing some scanners, defendants provided two alternatives under which plaintiffs could gain additional access to the

10

UCW system, which included payment of funds that would be credited toward the amount payable under the "terms of the settlement agreement." Id. at 56.

On June 26, 2011, plaintiffs' counsel responded with a letter that used phrases such as "the deal we had worked out," the "settlement we negotiated," the "settlement agreement we entered into," "not set out in the agreement," and "our letter agreement." Id. at 65-68. The letter also stated that "if UCW is contending that the settlement agreement is void then we need to begin all over again." Id. at 67. Based on the actions of the parties and the express language used in correspondence between their counsel, there is no question that the parties' intent was for the Letter Agreement to be a binding settlement agreement and that the May 9 Consent Order made effective the terms of that settlement in conformity with paragraph 11 of the Letter Agreement.

Plaintiffs next argue that the Letter Agreement did not specify several material terms, specifically (1) that the Letter Agreement was silent on what would happen if Onslow was unable to remove the records within the 21-day period allotted; (2) that the Letter Agreement was vague on the question of when the 21-day period would start; and (3) that plaintiffs did not agree to dismiss or release their claims and that the lawsuit is only mentioned in the subject line of the Letter Agreement. None of the alleged missing terms provides a basis for invalidating the Letter Agreement.

> A contract need not account for every possible contingency.
>
> The general rule is that, where a person by his contract charges himself with an obligation possible and lawful to be performed, he must perform it * * *. (I)f a party desires to be excused from performance in the event of contingencies arising, it is his duty to provide therefore in his contract, at least where he could reasonably have anticipated the event. 17A C.J.S. Contracts s 459 (1963).

11

Knowles v. Carolina Coach Co., 41 N.C. App. 709, 713, 255 S.E.2d 576, 579 (1979) (quoting Arnold v. Ray Charles Enterprises, Inc., 264 N.C. 92, 141 S.E.2d 14 (1965)). Based on plaintiffs' alleged problems using the UCW system in the past, it was foreseeable that plaintiffs might encounter problems during the 21-day period and, thus, were under a duty to provide for such in the settlement agreement. Plaintiffs' own failure to do so is no basis for invalidating the contract for lack of such a term. The court further disagrees that the Letter Agreement was vague on the question of when the 21-day period would start. The Letter Agreement provided that Onslow would have "full access to the System for 21 days *from the date it established full functionality with RealMed*[.]" Defs.' Answer, Ex. 1 ¶ 6 (emphasis added). The term clearly provides that the period would begin to run when full functionality was established with RealMed. That plaintiffs now dispute *the date* when full functionality was established does not make the original term itself impermissibly vague. Furthermore, the terms of the Letter Agreement are both definite and comprehensive in addressing the harms alleged by plaintiffs in this action.

The crux of plaintiffs' complaint involved the recovery of their patients' medical and billing records from the UCW system. Plaintiffs alleged in their complaint that "UCW is holding [patient] medical and billing records hostage in an effort to gain leverage in collecting a disputed amount owed to UCW under a contract for use of UCW's software." Pls.' Compl. ¶ 1 (DE # 1). Plaintiffs demanded that defendants either produce those records or provide plaintiffs with access to the UCW system for three weeks to allow retrieval of those records. Id. at 11 ¶¶ 1-2. The Letter Agreement provided, among other things, (1) that UCW would create a portal through which Onslow could access and print patient invoices and medical and billing records and transmit billing information to RealMed; (2) that Onslow would have access to the system for

12

three weeks from the date it established a fully functional link with RealMed in order to process historical claims; and (3) that Onslow would pay UCW 20% of any sums collected from the processing of historical claims up to $65,000.00 and that those payments were for both the creation of the portal and the full satisfaction of all outstanding obligations and payments under the UCW Agreement. Defs.' Answer, Ex. 1 ¶¶ 1-2, 4, 6, 9 & 18. The Letter Agreement provided plaintiffs with precisely the relief they sought with respect to patient records, as well as resolving the issue of the disputed software fees owed to UCW.

Finally, the court is unpersuaded by the alleged failure of the Letter Agreement to provide for releases or dismissal of claims and to mention the litigation beyond the subject line. The Letter Agreement is expressly in reference to the litigation. As plaintiffs noted, the case name and number are noted in the Letter Agreement's subject line. It also refers to the "mutual advantage of global resolution of all matters" between the parties and provides for entry of a consent order *in this litigation* in order to become effective. There is no basis to conclude that the Letter Agreement purports to settle anything other than the issues in dispute in this case. Additionally, plaintiffs' counsel added language to the Letter Agreement providing that both parties would sign mutual releases, id., Ex. 1 ¶ 15, and the May 9 Consent Order, entered pursuant to the Letter Agreement, provided that after consummation of the settlement, the parties would tender a consent order of dismissal. Accordingly, there is no merit to the contention that the Letter Agreement did not contemplate that claims would be released and dismissed.

In sum, there is no question, based on the pleadings, attachments thereto, and documents of which the court may take judicial notice—all viewed in the light most favorable to plaintiffs— that the Letter Agreement contained sufficiently definite terms and expressed the mutual assent necessary to create a valid and enforceable contract, which was intended by the parties to

13

constitute a settlement of this action. However, this conclusion does not end the court's inquiry, because plaintiffs have alternatively argued that even if the Letter Agreement is an enforceable contract, defendants materially breached its terms by terminating Onslow's access to the UCW system. The court now turns to this question.

### b. Breach of Contract

Plaintiffs alternatively argue that even if the Letter Agreement is an enforceable contract, defendants materially breached its terms by terminating Onslow's access to the UCW system. Plaintiffs further contend that, based on defendants' material breach, they would be entitled to rescission of the Letter Agreement and to pursue their original claims. Defendants argue that they did not breach the settlement agreement by failing to give Onslow 21 days of access from the date it achieved full functionality with RealMed, because it was Onslow's choice not to establish a direct connection with RealMed.

"As a general rule, if either party to a bilateral contract commits a material breach of the contract, the non-breaching party is excused from the obligation to perform further." McClure Lumber Co. v. Helmsman Const., Inc., 160 N.C. App. 190, 198, 585 S.E.2d 234, 239 (2003) (citing Lake Mary Ltd. Part. v. Johnston, 145 N.C. App. 525, 537, 551 S.E.2d 546, 555, disc. rev. denied, 354 N.C. 363, 557 S.E.2d 539 (2001)). However, "one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance." Huttenstine v. Mast, 334 Fed. App'x 536, 538, 2009 WL 1743693, at *2 (4th Cir. June 22, 2009) (quoting In re Bigelow, 185 N.C. App. 142, 649 S.E.2d 10, 13–14 (2007) (citations omitted)). Furthermore, "to justify rescission of a contract, the breach of the contract must be so material as in effect to defeat the very terms of the contract." Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP, 394 F. Supp. 2d 762, 769 (M.D.N.C. 2005) (citing

14

Childress v. C.W. Myers Trading Post, Inc., 247 N.C. 150, 100 S.E.2d 391 (1957); Brannon v. Wood, 239 N.C. 112, 79 S.E.2d 256 (1953); Jenkins v. Myers, 209 N.C. 312, 183 S.E. 529 (1936)).

Plaintiffs contend that Onslow did not achieve full functionality with RealMed until June 17, 2011, and that, therefore, the 21-day period should have run from that date. There is some evidence to support plaintiffs' position in the email communications between counsel for the parties. For example, in a June 15, 2011 email to defendants' counsel, plaintiffs' counsel stated that there had been multiple issues with RealMed preventing full functionality and that he understood the parties' agreement to be that "Onslow would have 21 days of access contingent on full functionality with RealMed." Defs.' Answer, Ex. 6 at 33. However, there is also evidence that supports defendants' contention that Onslow chose to proceed in a fashion other than the one contemplated by the parties with respect to RealMed, which frustrated Onslow's ability to achieve full functionality with RealMed. For example, in response to the June 15, 2011, email of plaintiffs' counsel, defendants' counsel noted both Onslow's alleged deviation from the procedure to achieve full functionality with RealMed and Onslow's use of the UCW system, beginning March 31, 2011, to retrieve patient medical records. Id. at 31-32. The court finds that a material question of fact exists as to whether full functionality was achieved on May 31, 2011, to start the 21-day period and, if full functionality was not achieved, whether that failure was caused by Onslow's own actions so as to prevent it from benefitting from its own nonperformance.

In sum, the court finds that, despite having concluded that the Letter Agreement was a valid and enforceable contract, the existence of a material question of fact precludes granting defendants' motion for judgment on the pleadings or dismissal of plaintiffs' complaint, where

15

plaintiffs have asserted a right to rescind the Letter Agreement and to pursue their original claims based on the alleged breach. See Nakell, 394 F. Supp. 2d at 769-70 ("[W]hether or not a breach occurred and, if so, whether it was material, would require a consideration of facts and evidence beyond the pleadings themselves.") (citing Combined Ins. Co. v. McDonald, 36 N.C. App. 179, 184, 243 S.E.2d 817, 820 (1978); Opsahl v. Pinehurst, Inc., 81 N.C. App. 56, 344 S.E.2d 68 (1986)).

## CONCLUSION

Defendants' motion for judgment on the pleadings, to dismiss the complaint, for enforcement of the settlement agreement, and for attorney's fees and expenses (DE # 22) is DENIED.

SO ORDERED, this the 17 day of May, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge